COURT OF 
APPEALS
SECOND 
DISTRICT OF TEXAS
FORT 
WORTH
 
NO. 2-03-308-CV

  
IN 
RE JUAN MANUEL T. ZAPATA                                               RELATOR

------------
 
ORIGINAL 
PROCEEDING
 
------------
 
OPINION
 
------------
        Relator 
Juan Manuel T. Zapata filed this petition for writ of habeas corpus challenging 
the validity of his commitment to jail following a hearing on a motion for 
enforcement of child support. We ordered Relator released upon the posting of a 
bond pending a decision in this case. See Tex. R. App. P. 52.8(b)(3). We have now 
received the requested response from the real party in interest, Sandy 
Hernandez. We hold that: certain portions of the trial court’s order are void 
and are therefore deleted; Relator’s challenge to the civil contempt portion 
of the trial court’s order is premature and cannot be addressed by us in this 
proceeding; and the trial court’s order does not contain sufficient language 
to constitute a commitment order. Therefore, we order Relator immediately 
discharged from custody.
Background
Paternity established
        In 
an agreed “Child Support Review Order,” signed on April 16, 2003, paternity 
was established between Relator and his daughter. Relator and the child’s 
mother, Sandy Hernandez, were appointed joint managing conservators. Relator was 
ordered to pay current child support ($160/mo.), cash medical support ($18/mo.), 
and retroactive child support ($50/mo.).[1]  The 
first combined payment was due May 1, 2003.[2]
Motion To Enforce
        On 
August 21, 2003, Hernandez filed a motion for enforcement, alleging Relator 
failed to pay child support, cash medical support, and retroactive child support 
for the payments due on the first day of May, June, July, and August 2003. 
Relator requested appointment of counsel, but was found not to be indigent. The 
hearing on Hernandez’ motion for enforcement was held on October 13, 2003 
before a family court master. Relator represented himself pro se.
Trial court’s contempt order
        On 
October 13, 2003, the family court master and the district court judge signed an 
“Order Holding Respondent In Contempt For Failure To Pay Child Support, 
Granting Judgment, And For Commitment To County Jail.” This is the order about 
which Relator complains in this habeas corpus proceeding.
        In 
the order, the court found Relator in criminal contempt for failing to pay 
“child support, attorney’s fees and court costs as ordered” in the amount 
of $160 per month for June, July, and August 2003. Relator was ordered confined 
in the Tarrant County jail for 180 days for each of these violations. The order 
further recites that “IT IS THEREFORE ORDERED that [Relator] is committed to 
the county jail of Tarrant County, Texas, for a period of 180 days for each 
separate violation enumerated above” and that the periods of confinement shall 
run concurrently.
        The 
order also found Relator in civil contempt and ordered him confined in the 
Tarrant County jail until he pays $7618.88 in child support arrearage, $148 in 
costs for the enforcement proceeding, and $1800 in attorney’s fees for the 
enforcement proceeding.
        The 
order concludes with: “IT IS ORDERED that all writs and other process 
necessary for the enforcement of this order be issued.” No other writs or 
other process have been issued by the trial court or the trial court clerk. 
Relator was incarcerated pursuant to the trial court’s order from October 13, 
2003 until October 25, 2003, when he posted the writ bond set by this court.
Habeas Corpus Review
        The 
only remedy to review contempt proceedings where the Relator is in custody is by 
habeas corpus. Ex parte Cardwell, 416 S.W.2d 382, 384 (Tex. 1967) (orig. 
proceeding). An original habeas corpus proceeding is a collateral attack on a 
contempt decree. Ex parte Rohleder, 424 S.W.2d 891, 892 (Tex. 1967) 
(orig. proceeding). For this court to order the release of Relator, the trial 
court's order must be void, either because it was beyond the power of the court 
or because it deprived Relator of his liberty without due process of law. See 
Ex parte Barnett, 600 S.W.2d 252, 254 (Tex. 1980) (orig. proceeding).
Is There A 
Valid Commitment Order?
        Relator 
contends that his confinement is illegal because there is no valid commitment 
order. In order to satisfy due process requirements, both a written judgment of 
contempt and a written commitment order are necessary to imprison a person for 
constructive contempt of court. Ex parte Amaya, 748 S.W.2d 224, 224-25 
(Tex. 1988) (orig. proceeding). Imprisonment without a valid commitment order is 
a violation of due process. Ex parte Wilson, 797 S.W.2d 6, 7 (Tex. 1990) 
(orig. proceeding) (holding it is well-settled that to satisfy due process 
requirements, a valid commitment order is essential). The directive that a 
person be placed in jail and detained may be contained in an authenticated copy 
of the court's judgment or in a separate order signed by the judge or by the 
clerk of the court at the judge's direction. Barnett, 600 S.W.2d at 256. 
An arrest without a written commitment order made for the purpose of enforcing a 
contempt judgment is an illegal restraint from which the prisoner is entitled to 
be relieved. Amaya, 748 S.W.2d at 225.[3]
        Relator 
relies upon the case of Ex parte Hernandez, 827 S.W.2d 858 (Tex. 1992) 
(orig. proceeding), in which the supreme court reiterated these basic principles 
and stated:
  
A 
commitment order is the warrant, process or order by which a court directs a 
ministerial officer to take custody of a person. The order containing this 
directive need not take a particular form and may be a separate order issued by 
the court, an attachment or order issued by the clerk at the court's direction, 
or included in the contempt judgment. Although the form of the order is not 
important, the substance is.

 
Id. 
at 858 (emphasis added) (citations omitted). The contempt order in Hernandez 
found the Relator had violated the trial court’s judgment, held him in 
contempt for that violation, and ordered his punishment at confinement in the 
county jail for 180 days and payment of a $500 fine and costs of court. Id. 
at 858-59. The supreme court held that “[t]he contempt order does not direct 
the sheriff or other ministerial officer to take Hernandez into custody and 
detain him under the terms of the judgment, nor does it direct the clerk to 
issue a written attachment or order of commitment to the proper officer.” Id. 
at 859. The opinion concludes:
  
[T]he 
judgment of contempt against Hernandez cannot serve as an order of commitment 
because it contains no directive to the sheriff or other appropriate officer, 
and that without an order of commitment Hernandez is not validly confined.

  
Id. 
at 858. The court granted the relief sought in the writ of habeas corpus and 
ordered the relator discharged. Id.
        Sandy 
Hernandez, the real party in interest in this case, responds that there is no 
bar to having the commitment order and the order of contempt in one instrument, 
a premise with which we agree. However, that is not the issue we must resolve. 
We must determine whether the language in the trial court’s order contains a 
directive to the sheriff of Tarrant County to take Relator into custody and 
detain him under the terms of the contempt order.
Analysis
        The 
courts of appeals are not necessarily in agreement regarding the specificity and 
sufficiency of the “directive” language that the Texas Supreme Court has 
held is necessary to constitute a valid commitment order.
        In 
Ex parte Johns, the trial court signed an instrument entitled “ORDER 
HOLDING RESPONDENT IN CONTEMPT FOR FAILURE TO PAY CHILD SUPPORT GRANTING 
JUDGMENT, AND FOR COMMITMENT TO COUNTY JAIL.” 807 S.W.2d 768, 774 (Tex. 
App.—Dallas 1991, orig. proceeding). The document also ordered Johns committed 
to the Dallas County jail for a specified time. Id. The Dallas Court of 
Appeals held that this type of recitation “constitutes a directive that a 
person be placed in jail and detained and that a contempt judgment with this 
language also constitutes a valid commitment order.” Id.
        Citing 
Johns, the court in In re Dotson held that Hernandez was 
distinguishable because the Hernandez contempt order did not include 
language committing Hernandez to 
jail, whereas the Dotson contempt order was entitled “ORDER HOLDING 
RESPONDENT IN CONTEMPT FOR FAILURE TO PAY CHILD SUPPORT, GRANTING JUDGMENT, AND 
FOR COMMITMENT TO COUNTY JAIL” and ordered that “Respondent is committed 
to the county jail of Galveston County” for 30 days. In re Dotson, 981 
S.W.2d 237, 238 & n.2 (Tex. App.—Houston [1st Dist.] 1998, orig. 
proceeding).[4]
        The 
Austin Court of Appeals has held the following language in a contempt order is 
sufficient to constitute a commitment order, “It is ordered that [the relator] 
shall be confined in the county jail of Burnet County, Texas, until [the relator] 
has complied with the following orders[,]” and that the contempt “may be 
purged by complying with all of the conditions previously breached.” In re 
Ross, No. 03-03-00137-CV, 2003 WL 1882257, at *4 (Tex. App.—Austin Apr. 
17, 2003, orig. proceeding). Without discussing whether this language 
constitutes an order by which the trial court directed a ministerial officer to 
take custody of the relator pursuant to Hernandez, the court of appeals 
held that this language “details to the contemner in clear, specific and 
unambiguous language how to gain release” from the contempt ruling, and the 
court overruled the relator’s contention that the contempt order failed to 
include a commitment order. Id.
        In 
Ex parte Ustick, the court reviewed a contempt order that ordered the 
relator “committed to the county jail for 180 days for each separate 
act of contempt” and ordered the relator “committed to the county jail until 
he pays $1000.00 in child support arrearages.” 9 S.W.3d 922, 924 
(Tex. App.—Waco 2000, orig. proceeding). There was no other language or 
document that could be construed as a written commitment order. Id. In 
holding the contempt order in Ustick insufficient to meet the supreme 
court’s standards in Hernandez, the court stated:
  
In 
distinguishing Hernandez, the First Court in Houston claimed the 
difference between Dotson, Johns, and Hernandez was that in 
Hernandez, the order did not say that the contemnor was 
"committed" to jail. Dotson, 981 S.W.2d at 238. After reading Hernandez, 
we do not believe the term "committed" is determinative of a 
sufficient commitment order. The Supreme Court specifically stated that the 
order in Hernandez did not direct the sheriff or other ministerial 
officer to take Hernandez into custody and detain him pursuant to the contempt 
order. We believe this language to be dispositive in determining the sufficiency 
of a commitment order. Therefore, we decline to follow Johns and Dotson 
and follow, as we must, the lead of the Supreme Court in Hernandez. The 
enforcement order against Ustick is not sufficient as a commitment order.

Id. 
at 924-25.
        In 
In re Walling, the trial court’s “Order of Commitment” found the 
relator in contempt, set a period of confinement, and stated, "Let, 
therefore, commitment issue to the Sheriff of Harris County, Texas, accompanied 
by a signed copy of this order." No. 14-03-00558-CV, 2003 WL 21543538, at 
*1 (Tex. App.—Houston [14th Dist.] July 10, 2003, orig. proceeding) (mem. 
op.). However, the order did not actually direct anyone to take Walling into 
custody. Id. Citing Hernandez, the court held this was not a valid 
written commitment order and granted habeas relief. Id.[5]
        The 
only factual difference between the trial court’s order in the case before us 
and the order in the supreme court’s Hernandez decision is that the 
title of our contempt order includes the phrase “And For Commitment To County 
Jail” and that it orders Relator “committed” to Tarrant County jail for 
criminal contempt. The supreme court has explained that a commitment order 
directs a ministerial officer to take custody of a person. The trial court’s 
order in this case does not contain any language whatsoever directing the 
sheriff or any other appropriate person to take custody of Relator, and no 
additional document was ever signed by the trial judge or issued by the court 
clerk that contained the required directive. We conclude that this lack of 
directive is fatal to Sandy Hernandez’ argument that the contempt order should 
also be construed as a commitment order. See Hernandez, 827 S.W.2d at 
858-59; Ustick, 9 S.W.3d at 924; Walling, 2003 WL 21543538, at *1. 
Because the record does not contain any document that directs the sheriff to 
take custody of Relator and detain him under the terms of the contempt order, we 
hold Relator is being illegally restrained.
Criminal Contempt
        Relator 
next challenges the criminal contempt portion of the court’s October 13, 2003 
contempt order. If the contempt order is void, no other writ of commitment can 
subsequently be issued for its enforcement. Ex parte Arapis, 157 Tex. 
627, 306 S.W.2d 884, 887 (1957) (orig. proceeding) (ordering the relator 
discharged because writ of commitment was functus officio[6]  
but further addressing merits of the relator’s complaint regarding the 
contempt judgment). Therefore, we address Relator’s complaint that the court 
erred in finding Relator in contempt of court for his failure to pay 
attorney’s fees and court costs, and that the court improperly assessed a 
punitive sanction for this alleged criminal contempt.
        In 
her motion for enforcement, Sandy Hernandez alleged that Relator had not made 
the required payments of $228 per month for the months of May, June, July, or 
August 2003. These payments were for current child support ($160/mo.), cash 
medical support ($18/mo.), and retroactive child support ($50/mo.). In the trial 
court’s contempt order, the court found that Relator failed to pay the child 
support, attorney’s fees, and court costs for the months of June, July, and 
August 2003.[7]  Sandy Hernandez acknowledges 
that the finding of nonpayment of attorney’s fees and court costs is erroneous 
because Relator was never previously ordered to pay these items. She requests we 
reform the contempt order by striking the void provisions that do not comport 
with her motion for enforcement.
        Void 
portions of a contempt order are capable of being severed from the valid 
portions of the order. See Ex parte Roosth, 881 S.W.2d 300, 301 (Tex. 
1994) (orig. proceeding) (severing provision barring good behavior credit and 
denying relief as to remainder of order); In re Patillo, 32 S.W.3d 907, 
909 (Tex. App.—Corpus Christi 2000, orig. proceeding); In re Aarons, 10 
S.W.3d 833, 834 (Tex. App.—Beaumont 2000, orig. proceeding).
        We 
agree with Sandy Hernandez that the trial court’s contempt order can be 
reformed so as to delete the void language. The motion for enforcement alleged 
Relator had failed to pay child support in the amount of $160 per month. The 
contempt order finds that Relator failed to pay “child support, attorney’s 
fees and court costs as ordered” on June 1, July 1, and August 1, 2003, with 
$160 due on each date. The mistaken inclusion in the trial court’s order of 
“attorney’s fees and court costs” does not harm Relator because the motion 
for enforcement fairly apprised Relator of the allegations against him, that 
Sandy Hernandez was seeking a contempt finding of nonpayment of $160 per month 
for June, July, and August, and this is what the trial court found to be in 
arrears. Accordingly, we reform the trial court’s order to delete the finding 
that Relator was ordered to pay attorney’s fees and court costs and the 
finding that he was in contempt for failure to pay attorney’s fees and court 
costs.
Civil Contempt
        Relator 
next alleges that the civil contempt portion of the trial court’s order is 
void because it requires him to pay as a condition of his release from jail the 
sum of $7,618.88 in child support arrearage, whereas the motion for enforcement 
alleged a total arrearage of only $1,368. He further asserts that he cannot be 
found in contempt for nonpayment of attorney’s fees and costs assessed for the 
first time at the enforcement hearing. Without reviewing the merits of 
Relator’s claim, we agree with Sandy Hernandez that Relator’s challenge to 
the civil contempt portion of the trial court’s order is premature. See In 
re Mendoza, No. 01-03-226-CV, 2003 WL 1090705, at *1 (Tex. App.—Houston 
[1st Dist.] 2003, orig. proceeding) (mem. op.); Ex parte Brown, 875 
S.W.2d 756, 761-62 (Tex. App.—Fort Worth 1994, orig. proceeding). If Relator 
is subsequently confined for criminal contempt and the trial court continues to 
confine Relator after he serves the criminal contempt portion of the trial 
court’s order, Relator may file another petition for writ of habeas corpus at 
that time challenging the validity of the civil contempt portion of the order. See 
Brown, 875 S.W.2d at 761-72.
Conclusion
        We 
reform the trial court’s October 13, 2003 order so as to delete the void 
finding that Relator was ordered to pay attorney’s fees and court costs and is 
in contempt for nonpayment of these items. We do not address Relator’s 
challenge to the civil contempt portion of the contempt order because such 
challenge is premature. We hold that because there is no commitment order, 
Relator is being illegally restrained, and we order him immediately discharged 
and the sureties on his bond discharged from liability.
 
                                                          DIXON 
W. HOLMAN
                                                          JUSTICE

 
PANEL 
B:   LIVINGSTON, DAUPHINOT, and HOLMAN, JJ.

DELIVERED: 
March 4, 2004


NOTES
1.  
The daughter’s date of birth is December 14, 1999, and the parties agreed that 
retroactive child support as of April 16, 2003 would be $6,559.54.
2.  
Relator was also ordered to pay court costs, but payment was not due until May 
1, 2004. Both parties appeared pro se; therefore, no attorney’s fees were 
ordered paid by Relator.
3.  
An exception to this rule is that a person may be incarcerated for a short and 
reasonable time while the judgment of contempt and order of commitment are being 
prepared for the judge’s signature. Amaya, 748 S.W.2d at 225; Barnett, 
600 S.W.2d at 257.
4.  
See also In re Samuels, which summarily cites both Hernandez and Dotson 
in support of its holding that the contempt order in that case was not void 
because it “finds relator in contempt, commits him to the county jail of 
Collin County, and sets forth the ways in which relator can purge himself of the 
contempt.” No. 05-03-01423-CV, 2003 WL 22332404, at *1 (Tex. App.—Dallas 
Oct. 14, 2003, orig. proceeding) (mem. op.). The Samuels opinion does not 
quote the exact language of the trial court’s order in that case, so we do not 
find the opinion instructive in the instant case.
5.  
We note also that the Texarkana Court of Appeals addressed this issue in Ex 
parte Morrow in which the title of the trial court’s contempt order 
included “order of commitment,” but there was no language committing the 
relator to jail. No. 06-02-00082-CV, 2002 WL 1301327, at *1 n.3 (Tex. 
App.—Texarkana June 13, 2002, orig. proceeding) (not designated for 
publication). The contempt order held the relator in contempt and assessed 
punishment at confinement in the Gregg County jail for 90 days. Id. at 
*1. However, the appellate court held that the contempt order did not contain 
any “language of command, and it has no direction to any officer. Accordingly, 
under Hernandez, it cannot serve as an order committing [the relator] to 
jail.” The court granted habeas corpus relief. Id. at *2.
6. 
Functus officio means “literally ‘a task performed,’ and meaning in 
practice ‘having fulfilled its purpose or discharged its duties, an officer or 
body is of no further use or authority.’” Dictionary of Modern Legal Usage 253-54 
(1987). The Arapis court held that the relator’s arrest was functus 
officio because the commitment order was executed after its return date. 306 
S.W.2d at 886-87.
7.  
There is no finding that Relator failed to pay the cash medical support payment 
or the retroactive child support payment for these months.